MGD/HDM:AJE
F. #2023R00063

Filed Under Seal
File Date: February 24, 2023
Case Number: 23-cr-00088
Judge Carol Bagley Amon
Magistrate Judge Marcia M. Henry

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

　- against -

CHI KWAN WONG,
　also known as "Ken,"

　　　　　　Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 982(a)(1), 982(a)(7),
982(b)(1), 1349, 1956(h) and 3551 et
seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I. Background

　A. The Medicare and Medicaid Programs

　　1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

　　2. Medicare was divided into multiple parts. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare. Medicare beneficiaries could obtain Part D benefits in two ways: (a) by joining a prescription drug plan, which covered only prescription drugs, or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services (collectively, "Part D Plans"). These Part D Plans were

operated by private companies, often referred to as drug plan "sponsors," that were approved by Medicare.

3. Medicare Part C—also known as Medicare Advantage—offered beneficiaries the opportunity to secure coverage from private insurers ("Contractors") for many of the same services that were provided by Part D, in addition to certain mandatory and optional supplemental benefits.

4. CMS provided fixed, monthly payments to the Contractors for each beneficiary enrolled in a Medicare Advantage plan administered by the Contractors. These monthly payments were referred to as "capitation" payments. To obtain payment for treatment or services provided to a beneficiary enrolled in a Medicare Advantage plan, health care providers submitted itemized claim forms to the Contractors.

5. The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including New York. Individuals who received benefits under Medicaid were referred to as Medicaid "recipients."

6. In New York State, Medicaid provided coverage to its recipients for prescription drugs. Medicaid recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through "Medicaid Managed Care Plans," which were administered by private insurance companies that were paid by Medicaid.

7. As part of their insurance benefits, some Medicare beneficiaries and Medicaid recipients enrolled in certain Medicare Advantage and Medicaid Managed Care plans

received a certain amount of credit per month that could be spent on eligible over-the-counter ("OTC") non-prescription items such as analgesics, diabetes supplies, antihistamines, weight management supplies, sleep aids, vitamins, toothpaste, durable medical equipment and other items. The monthly OTC credit was pre-loaded onto debit cards known as "over-the-counter cards" or "OTC Cards," which were issued to beneficiaries and recipients by the plan sponsors. Any funds that were not used by the end of the month were forfeited, and the OTC Cards were reloaded each month with refreshed funds. Pharmacies generally dispensed OTC benefits to beneficiaries and recipients by swiping the OTC Cards, like debit cards, through an electronic payment system, in exchange for the eligible OTC items being purchased by the beneficiaries and recipients.

8. Medicare, Part D Plans, Medicare Advantage Plans, Medicaid and Medicaid Managed Care Plans (collectively, the "Health Plans") each qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

9. Pharmacies were permitted to submit claims for reimbursement to the Health Plans only for medications that were medically necessary and that were not the product of kickbacks and bribes, among other requirements.

B. The Defendant and Relevant Entities

10. The defendant CHI KWAN WONG, also known as "Ken," was a pharmacist who was licensed by the State of New York and resided in Brooklyn, New York.

11. A Star Pharmacy Inc. ("A Star") was a pharmacy located in Brooklyn, New York. A Star was registered as a pharmacy establishment with the State of New York since approximately March 2016. A Star was owned by Amanda Hon and Si Ci Zhu, among

3

others. Between at least 2017 and 2021, the defendant CHI KWAN WONG worked at A Star as a purported consultant.

12. Clinic 1, an entity the identity of which is known to the Grand Jury, was a medical practice located near A Star in Brooklyn, New York.

13. Jian Ai Chen was an employee of Clinic 1.

14. Individual 1, an individual whose identity is known to the Grand Jury, was listed as an owner and officer of A Star in registration materials with the New York State Board of Pharmacy, but Individual 1 was generally not involved in the operations or decision-making of A Star. Individual 1 was Jian Ai Chen's former spouse.

C. <u>Diclofenac Epolamine</u>

15. Diclofenac epolamine was a nonsteroidal anti-inflammatory drug that was available as a transdermal patch and was indicated for the topical treatment of acute pain due to minor strains, sprains and contusions.

II. <u>The Health Care Fraud and Kickback Scheme</u>

16. In or about and between approximately December 2017 and January 2021, the defendant CHI KWAN WONG, together with others, agreed to execute and executed a fraudulent scheme at A Star whereby claims were submitted to the Health Plans that were procured by the payments of bribes and kickbacks, were medically unnecessary or did not otherwise qualify for reimbursement.

17. In particular, the defendant CHI KWAN WONG agreed with others, including Amanda Hon and Si Ci Zhu, to pay, and cause to be paid, bribes and kickbacks to: (a) A Star's customers in exchange for the ability to bill their insurance for pharmaceutical products; and (b) Jian Ai Chen in exchange for the referral of beneficiaries to A Star. WONG, together with others, further agreed to submit and caused to be submitted false and fraudulent claims to

the Health Plans for dispensing prescription drugs that were: (a) not eligible for payment by Medicare and Medicaid because, inter alia, they were dispensed in connection with the payment of kickbacks and bribes; and (b) medically unnecessary.

18. In furtherance of the scheme, the defendant CHI KWAN WONG regularly provided information regarding highly profitable prescription drugs to Amanda Hon, Jian Ai Chen and others, to obtain prescriptions for those medications from Clinic 1 so that A Star could then bill beneficiaries' and recipients' insurance plans for dispensing those medications, without regard to medical necessity.

19. To generate business and retain customers for A Star, the defendant CHI KWAN WONG, together with others, agreed to offer and pay kickbacks and bribes to Medicare beneficiaries and Medicaid recipients in exchange for the ability to bill those beneficiaries' and recipients' insurance plans for dispensing prescription drugs. These kickbacks and bribes included, among other things, cash and so-called "coupons," which were gift certificates and gift cards to local supermarkets. Employees of A Star also provided cash bribes and kickbacks to beneficiaries and recipients in exchange for swiping a beneficiary's OTC Card, even though no actual OTC item or product was provided to the beneficiary or recipient.

20. From approximately August 2019 through January 2021, Part D Plans paid A Star over approximately $1.3 million for dispensing one such prescription drug, diclofenac epolamine.

III.   The Money Laundering Conspiracy

21. In or about and between February 2020 and January 2021, the defendant CHI KWAN WONG, together with others, agreed to launder the criminal proceeds generated by A Star.

5

22. In particular, the defendant CHI KWAN WONG, together with others, agreed to receive cash in exchange for checks written on A Star's bank accounts and made payable to various companies. These checks drawn on A Star's bank accounts were frequently over $10,000. These payments were not related to any legitimate business transactions. Instead, the transactions were designed, in whole and in part, to conceal and disguise, among other things, the nature, location, source, ownership and control of the proceeds of unlawful activity.

23. The defendant CHI KWAN WONG, together with others, also concealed and disguised the scheme by creating and causing the creation of references on checks and fabricated invoices to give the appearance that A Star was paying legitimate business expenses, when in fact it was transmitting the proceeds of fraud to various co-conspirators.

## COUNT ONE
(Conspiracy to Commit Health Care Fraud)

24. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

25. In or about and between December 2017 and January 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHI KWAN WONG, also known as "Ken," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud the Health Plans, which are health care benefit programs, as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, the Health

Plans, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551, et seq.)

## COUNT TWO
(Money Laundering Conspiracy)

26. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between December 2017 and January 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHI KWAN WONG, also known as "Ken," together with others, did knowingly and intentionally conspire to:

(a) conduct one or more financial transactions in and affecting interstate commerce, to wit: the transfer and delivery of United States currency and the transfer of checks drawn on accounts at a financial institution, which transactions in fact involved the proceeds of specified unlawful activity, to wit: health care fraud and conspiracy, in violation of Title 18, United States Code, Sections 1347 and 1349, and offering and paying health care kickbacks and conspiracy, in violation of Title 42, United States Code, Section 1320a-7b(b)(2) and Title 18, United States Code, Section 371, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity and knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) engage and attempt to engage in one or more monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a

7

value greater than $10,000 and that was derived from specified unlawful activity, to wit: health care fraud and conspiracy, in violation of Title 18, United States Code, Sections 1347 and 1349, and offering and paying health care kickbacks and conspiracy, in violation of Title 42, United States Code, Section 1320a-7b(b)(2) and Title 18, United States Code, Section 371, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

28. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

29. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT TWO

      30.    The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

      31.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*[signature]*
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*Glenn S. Leon / by AJE*
_____
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F.#: 2023R00063

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

CHI KWAN WONG,

Defendant.

## INDICTMENT

(T. 18, U.S.C. §§ 982(a)(1), 982(a)(7), 982(b)(1), 1349, 1956(h) and 3551 et seq.; T. 21, U.S.C. § 853(p)))

*A true bill*

_____*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____*Clerk*

Bail, $ _____

*Andrew Estes, Trial Attorney (718) 254-6250*