1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - -   X

4    UNITED STATES OF AMERICA,    :    23-CR-88(HD)

5
        -against-               :    United States Courthouse
6                                     Brooklyn, New York

7    CHI KWAN WONG,              :
                                      January 8, 2024
8           Defendant.          :    2:00 o'clock p.m.

9    - - - - - - - - - - - -   X

10
                    TRANSCRIPT OF PLEADING
11           BEFORE THE HONORABLE HECTOR GONZALEZ
                 UNITED STATES DISTRICT JUDGE.
12

13   APPEARANCES:

14
     For the Government:         BREON PEACE
15                               United States Attorney
                                 BY: MIRIAM GLASER DAUERMANN
16                               Assistant United States Attorney
                                 271 Cadman Plaza East
17                               Brooklyn, New York

18
     For the Defendant:          ABELL ESKEW LANDAU LLP
19                               256 Fifth Avenue, 5th Floor
                                 New York, New York
20
                                 BY: DAVID M. ESKEW, ESQ.
21                                   JAN JORRITSMA, ESQ.

22   Court Reporter:             Charleane M. Heading
                                 225 Cadman Plaza East
23                               Brooklyn, New York
                                 (718) 613-2643
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

                 CMH    OCR    RDR    FCRR

1          THE CLERK:  This is criminal cause for a change of

2    plea, docket number 23-CR-88, United States of America versus

3    Wong.

4          Will the parties please state your appearances for

5    the record starting with the government.

6          MS. GLASER DAUERMANN:  Miriam Glaser Dauermann for

7    the United States.  Good afternoon, Your Honor.

8          THE COURT:  Good afternoon.

9          MR. ESKEW:  Good afternoon, Your Honor.  David

10   Eskew, Abell Eskew Landau, on behalf of the defendant who is

11   seated to my left.  On my right is an associate from my law

12   firm, Jan Jorritsma.

13         THE COURT:  All right.  Good afternoon.

14         Good afternoon, Mr. Wong.  I understand that you are

15   here today for a change of plea hearing.  Is that your

16   understanding?

17         THE DEFENDANT:  Yes.

18         THE COURT:  You can pull the mic up.

19         So, obviously, that's a very important decision for

20   you so I want to make sure that we take our time and if, at

21   any point, anything I say doesn't make sense, just let me know

22   and I'll try to be a little more clear or if, at any point,

23   you want to take a break to discuss something with your

24   attorney, just let me know and we'll take as much time as you

25   need.  Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  So what I'm going to go through today is

3    I am going to go, one, through the charges or the charge that

4    you are going to be pleading guilty to, I am going to ask you

5    a series of questions about what it means to plead guilty and

6    the rights that you will be giving up by pleading guilty, and

7    then when I'm satisfied that you understand those rights, then

8    I will give you an opportunity to allocute or to say what it

9    is in your own words that makes you guilty of the offense.

10          So as I understand it, you will be pleading guilty

11   to Count One and we will go through that at the appropriate

12   time.

13          Do you have any questions right now?

14          THE DEFENDANT:  No.

15          THE COURT:  At this time, I just need you to stand

16   so that Mr. Neptune can swear you in.

17          THE CLERK:  Raise your right hand.

18          (Defendant was duly sworn/affirmed by the clerk.)

19          THE COURT:  You can be seated.

20          All right.  So I do need to now remind you that

21   because you are under oath, obviously any answers to my

22   questions that are false could subject you to additional

23   prosecution for providing false answers under oath.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

1    THE COURT:  All right.  Can you tell us what is your

2  full name?

3    THE DEFENDANT:  Chi Kwan Wong.

4    THE COURT:  How old are you?

5    THE DEFENDANT:  Thirty-three.

6    THE COURT:  What's the highest level of education

7  that you have?

8    THE DEFENDANT:  Doctor of pharmacy.

9    THE COURT:  And, obviously, you are able and

10  understand English, correct?

11    THE DEFENDANT:  Yes.

12    THE COURT:  And have you ever been treated or

13  hospitalized for any sort of mental illness?

14    THE DEFENDANT:  I'm treating with a psychiatrist for

15  right now.  I'm currently working with a social worker weekly.

16    THE COURT:  All right.  So that's a regular session

17  that you go to?

18    THE DEFENDANT:  Yes.  It's been going on for over a

19  year now.

20    THE COURT:  Okay.  And is there anything about the

21  reason why you're seeing the licensed social worker that would

22  affect your ability to understand the proceedings today?

23    THE DEFENDANT:  No.

24    THE COURT:  All right.  And have you taken any

25  drugs, medicine or pills or alcohol or anything like that in

1    the last 24 hours?

2              THE DEFENDANT:  No.

3              THE COURT:  And have you ever been treated or

4    hospitalized for any type of addiction including drug or

5    alcohol abuse?

6              THE DEFENDANT:  No.

7              THE COURT:  And do you feel that your mind is clear

8    today?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And do you understand what is happening

11   today?  Have you had enough of an opportunity to discuss with

12   your attorney what's going to happen today?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And, Mr. Eskew, based on your

15   interactions with Mr. Wong, do you believe that he understands

16   the nature of today's proceedings?

17             MR. ESKEW:  Yes, Judge.

18             THE COURT:  And does he have any, based on your

19   observations, any physical or mental conditions that you think

20   would impair his ability to proceed today?

21             MR. ESKEW:  No.

22             THE COURT:  And have you had enough time to discuss

23   today's proceedings with him?

24             MR. ESKEW:  Yes, Judge.

25             THE COURT:  And do you feel that based on your

1 discussions with him, that he understands the rights that he

2 will be waiving by pleading guilty today?

3       MR. ESKEW:  I do.

4       THE COURT:  And also that he's capable of

5 understanding the nature of the proceedings?

6       MR. ESKEW:  Yes.

7       THE COURT:  And do you have any doubt as to

8 Mr. Wong's competence to plead at this time?

9       MR. ESKEW:  No.

10       THE COURT:  Have you had enough of an opportunity to

11 discuss with him the sentences, both maximum and the

12 guidelines that might affect his sentence in this case if I

13 accept his plea?

14       MR. ESKEW:  Yes, Judge.

15       THE COURT:  And, Mr. Wong, do you feel like you've

16 had enough of an opportunity to discuss today's proceedings

17 and your whole case with Mr. Eskew?

18       THE DEFENDANT:  Yes.

19       THE COURT:  And overall, are you satisfied with the

20 representation that you've received from him?

21       THE DEFENDANT:  Yes.

22       THE COURT:  Have you been given a copy of the

23 indictment in this case?  That's the document that contains

24 the charges against you.

25       THE DEFENDANT:  Yes.

1          THE COURT:  And I understand from reviewing the
2    papers in this case that the defendant, Ms. Glaser Dauermann,
3    will be pleading to Count One.  If you could summarize the
4    nature of those charges.
5          And, Mr. Wong, I'll ask you to listen closely as the
6    prosecutor describes the nature of the charges that you'll be
7    pleading guilty to.  Okay?
8          THE DEFENDANT:  Okay.
9          THE COURT:  All right.
10          MS. GLASER DAUERMANN:  Yes, Your Honor.  The
11    defendant is pleading guilty to Count One of the indictment
12    which is conspiracy to commit health care fraud.  He conspired
13    with others to submit claims to Medicare and Medicaid that
14    were tainted by kickbacks, medically unnecessary and,
15    otherwise, ineligible to be submitted to Medicare, and he did
16    that between December 2017 and December of 2020.
17          THE COURT:  And where was that, venue-wise?
18          MS. GLASER DAUERMANN:  It was within the Eastern
19    District of New York.
20          THE COURT:  Okay.  All right.
21          Do you understand, Mr. Wong, that those will be the
22    charges that you will be pleading guilty to today?
23          THE DEFENDANT:  Yes.
24          THE COURT:  And you have had a full opportunity or
25    enough opportunity to discuss those charges with your

1  attorney?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And, Mr. Eskew, do you believe that

4  Mr. Wong understands the nature of the charges that he'll be

5  pleading guilty to?

6          MR. ESKEW:  Yes, Judge.

7          THE COURT:  And Ms. Glaser Dauermann, are there

8  any -- the victims in this case are Medicare and Medicaid?

9          MS. GLASER DAUERMANN:  Yes, Your Honor.

10          THE COURT:  And through appropriate channels,

11  they've been notified of today's plea?

12          MS. GLASER DAUERMANN:  They have and I'm

13  representing them here.

14          THE COURT:  Okay.

15          Now, Mr. Wong, I'm going to go through a number of

16  rights and ask you whether, one, you understand that you have

17  that right and the importance of understanding that is that

18  you'll be giving up these rights as part of entering a plea.

19  Okay?

20          THE DEFENDANT:  Okay.

21          THE COURT:  So you have a right to continue to plead

22  not guilty and no one can force you to plead guilty.  Do you

23  understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And you would also have a right under

1  the constitution and the laws of the United States to both a

2  speedy and a public trial.  Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  And that trial would be by a jury.  Do

5  you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And at trial, you would be presumed

8  innocent and the government would have to prove your guilt

9  beyond a reasonable doubt, do you understand?

10           THE DEFENDANT:  Yes.

11           THE COURT:  And you would have the right to the

12  assistance of counsel for your defense who would represent you

13  at trial and at every other stage of this proceeding.  Do you

14  understand?

15           THE DEFENDANT:  Yes.

16           THE COURT:  You would have the right to see and hear

17  all witnesses at the trial and have them cross-examined in

18  your defense.  Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And you'd have the right on your own

21  part to decline to testify unless you voluntarily elected to

22  do so in your own defense.  Do you understand?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And you'd have the right to compel the

25  attendance of witnesses to testify at that trial in your own

1  defense if you chose to.  Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And if you were to decide not to testify

4  or to put on any evidence at trial, those facts could not be

5  held against you and I would instruct the jury that they could

6  not hold those facts against you.  Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And by entering a plea of guilty, if I

9  accept your plea, there will be no trial and you will have

10  waived or given up your right to a trial as well as all these

11  rights that I've just gone over with you.  Do you understand

12  that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So there will be no further trial of any

15  kind and no right of an appeal from a judgment of guilty.  I

16  will simply enter a judgment of guilty on the basis of your

17  guilty plea today.  Do you understand?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And if you plead guilty, part of the

20  process today is I'm going to have to ask you questions about

21  what it is that makes you guilty of the offense charged in

22  Count One.

23          So I'm going to be asking you to make statements

24  that incriminate yourself.  Do you understand that?

25          THE DEFENDANT:  Yes.

1      THE COURT: So, Mr. Wong, do you understand each and

2  every one of the rights that I've just gone over with you?

3      THE DEFENDANT: Yes.

4      THE COURT: And are you willing to give up these

5  rights including your right to a trial by a jury and all the

6  other rights associated with that that I've discussed with

7  you?

8      THE DEFENDANT: Yes.

9      THE COURT: Okay. I understand that there is a plea

10  agreement. Has that been signed?

11      MR. ESKEW: Yes, Judge.

12      THE COURT: Okay. So I'm going to have the original

13  of that plea agreement marked as Court Exhibit 1 and ask that

14  that be kept by the government in its custody.

15      MS. GLASER DAUERMANN: Yes, Your Honor.

16      THE COURT: One thing I noticed in the plea

17  agreement, and I just want to make sure, is one of the, one of

18  the enhancements, the one having to do with the government

19  health care program sustaining losses of over $1 million, is

20  that the correct site where that two level enhancement is? I

21  thought it was at Section 2B1.1(b)(7) --

22      MS. GLASER DAUERMANN: -- (b)(7), yes. That's a

23  typo.

24      THE COURT: It's a typo? Okay. Have you had an

25  opportunity to correct that even to just initial it with

1  counsel?

2         MS. GLASER DAUERMANN:  We can do that, I believe,

3  after the proceeding --

4         THE COURT:  Okay.

5         MS. GLASER DAUERMANN:  -- just for the formal

6  record.

7         THE COURT:  Is that acceptable, Mr. Eskew?

8         MR. ESKEW:  Yes, Judge.

9         THE COURT:  All right.

10         So let me go through that plea agreement with you,

11  Mr. Wong, and make sure that you understand what that plea

12  agreement means and what it does and how it affects you.

13  Okay?

14         Did you have enough -- one, did you sign that

15  agreement?

16         THE DEFENDANT:  I did.

17         THE COURT:  Okay.  And did you have an opportunity

18  to read and discuss the agreement with your attorney before

19  you signed it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And do you feel that you had sufficient

22  time to review it and to have any questions that you had about

23  it answered by your attorney?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And do you feel that you understand

1   what's encompassed in that plea agreement?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And, Mr. Eskew, did you have sufficient

4   time to review the agreement with your client?

5          MR. ESKEW:  Yes, Judge.

6          THE COURT:  And, Mr. Wong, do you have any questions

7   for me about the agreement?

8          THE DEFENDANT:  No.

9          THE COURT:  And does the agreement represent in its

10  entirety the understandings that you have with the government

11  about how your case will be resolved?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And has anyone made any promise or

14  assurance to you that is not in the agreement in order to

15  persuade you to accept the agreement?

16         THE DEFENDANT:  No.

17         THE COURT:  I just want to make sure you understand

18  my question.

19         Has anyone made any promises to you outside of

20  what's contained in the agreement in order to get you to sign

21  that agreement?

22         THE DEFENDANT:  No.

23         THE COURT:  And has anyone threatened you in any way

24  to persuade you to accept and execute the agreement?

25         THE DEFENDANT:  No.

1        THE COURT:  And, Mr. Eskew, were all formal plea

2 offers from the government conveyed to your client?

3        MR. ESKEW:  Yes, Judge.

4        THE COURT:  Now, I'm going to tell you a little bit

5 about some of the penalties for the crime to which you are

6 going to be pleading guilty to make sure that you understand

7 that and it should be all contained in your plea agreement as

8 well.

9        The charge to which you intend to plead guilty which

10 is in Count One is a conspiracy to commit health care fraud

11 and that charge has no minimum term of imprisonment but it

12 does have a maximum term of imprisonment of ten years.

13        Do you understand that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  And that charge also carries with it the

16 possibility that after any term of imprisonment, you can be

17 subjected to up to three years of what's known as supervised

18 release.

19        Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And supervised release means that there

22 will be a number of conditions that you'll have to follow and

23 be supervised by the Probation Department and that if you

24 violate any of those conditions, that could result in

25 additional prison time.

1        Do you understand that?

2        THE DEFENDANT:  Yes.

3        THE COURT:  And the crime to which you're pleading

4 guilty to also carries a possible maximum fine of the greater

5 of $250,000 or twice the gross gain or loss from the offense.

6        Do you understand that?

7        THE DEFENDANT:  Yes.

8        THE COURT:  And I'm also obligated, because you are

9 pleading to one count, there is a mandatory special assessment

10 of $100 that I have to assess at the time of sentencing.

11        Do you understand that?

12        THE DEFENDANT:  Yes.

13        THE COURT:  I also saw from the plea agreement that

14 restitution will be required in this case and per the plea

15 agreement, the restitution amount that the government submits

16 will be appropriate in this case is $1,352,941.

17        Do you understand that?

18        THE DEFENDANT:  Yes.

19        THE COURT:  And I won't have an opportunity to

20 assess what the appropriate restitution amount is until I've

21 had the Probation Department prepare a presentence report for

22 me.

23        Do you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  And I also see from the plea agreement

1  that you have agreed to enter into a money forfeiture judgment

2  of a little over $338,000.  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And, Mr. Wong, are you a U.S. citizen?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  So I won't go through what

7  the possible consequences of your conviction would be on your

8  immigration status.

9          Now, have you had an opportunity to discuss with

10  your attorney how the sentencing guidelines might affect your

11  sentence?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And has your attorney explained to you

14  that the sentencing guidelines are advisory, meaning that I'm

15  not bound by them but they are one of the factors that I have

16  to consider when determining the appropriate sentence in your

17  case?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Now, based on my review of the plea

20  agreement, I understand, Ms. Glaser Dauermann, that the

21  government believes that the appropriate guideline range in

22  this case is 30 to 37 months, is that correct?

23          MS. GLASER DAUERMANN:  That's correct, Your Honor.

24          THE COURT:  I also understand that the defendant has

25  reserved his right in that plea agreement to request that I

1 apply a mitigating role adjustment under the guidelines.

2        Is that correct, Mr. Eskew?

3        MR. ESKEW:  That's correct, Judge.

4        THE COURT:  So other than that potential role

5 adjustment, do you, Mr. Eskew, have any different calculation

6 of the guidelines?

7        MR. ESKEW:  No.  We and the government agree that

8 this is the appropriate estimate of the guidelines with the

9 exception of that carveout.

10        THE COURT:  And, Mr. Wong, what you should

11 understand is that these estimates that your attorney and the

12 government have worked out could be wrong.

13        Like I said, with respect to restitution, as with

14 the rest of your sentence end including the advisory guideline

15 range, I won't be able to make a determination of what that is

16 until I receive a presentence report from the Probation

17 Department.

18        Do you understand that?

19        THE DEFENDANT:  Yes.

20        THE COURT:  And do you understand that the sentence

21 I impose may be different from any estimate that your attorney

22 or the government may have given you?

23        THE DEFENDANT:  Yes.

24        THE COURT:  And as a general matter, I have the

25 authority in some circumstances to depart upward or downward

1  from the advisory guideline range and that could result in a

2  sentence that is either greater or lesser than the advisory

3  guideline range.

4          So as you sit here today, what I need you to

5  understand is that there is no guarantee as to what particular

6  guideline range will apply in your case.  Do you understand

7  that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you understand that if the

10  advisory guideline range in the presentence report is

11  different from the guideline range that's spelled out in the

12  plea agreement or that your attorney has advised you of, that

13  you will not be able to take back your plea?  Do you

14  understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And if the ultimate sentence I impose is

17  different from what you hope for or expect, you won't be able

18  to take back your plea.  So as you sit here today, there's no

19  way for you to know what your ultimate sentence will be

20  because I don't know what your ultimate sentence will be.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  So you should understand also that

24  there's no longer parole in the federal system and that means

25  that if you are sentenced to any period of incarceration, you

1  will not be released early on parole.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  I also see from the plea agreement that

5  you've agreed to a plea waiver -- an appeal waiver, which

6  means that under certain circumstances, depending on what

7  sentence I impose, you will be giving up your right to appeal

8  that sentence.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, do you have any questions for me

12  about the rights that you are giving up, the potential

13  punishments that you might face, the plea agreement that you

14  entered into with the government or the nature of the charges

15  or anything else about the proceedings against you?

16          THE DEFENDANT:  No.

17          THE COURT:  Okay.  And are you ready, Mr. Wong, at

18  this time to plead guilty?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And, Mr. Eskew, do you know of any

21  reason why your client should not plead guilty at this time?

22          MR. ESKEW:  No, Judge.

23          THE COURT:  All right.  Mr. Wong, what is your plea

24  to Count One of the indictment which is a conspiracy to commit

25  health care fraud?

1    THE DEFENDANT:  Guilty.

2    THE COURT:  And are you making the plea of guilty

3 voluntarily and of your own free will?

4    THE DEFENDANT:  Yes.

5    THE COURT:  And has anyone threatened or forced you

6 to plead guilty?

7    THE DEFENDANT:  No.

8    THE COURT:  And other than the agreement with the

9 government, has anyone made any promise that caused you to

10 plead guilty?

11    THE DEFENDANT:  No.

12    THE COURT:  And has anyone made any promise to you

13 as to what your sentence in this case will be?

14    THE DEFENDANT:  Yes.

15    THE COURT:  Someone has made a promise to you --

16    THE DEFENDANT:  No.  No.  Sorry.

17    THE COURT:  -- about what your sentence will be?

18    THE DEFENDANT:  No.

19    THE COURT:  Let me ask the question again.

20    Has anyone made any promise to you as to what your

21 sentence in this case will be?

22    THE DEFENDANT:  No.

23    THE COURT:  Now, at this time, in your own words, if

24 you can tell me what it is you did that makes you guilty of

25 the charge in Count One.

1    MR. ESKEW:  Judge, with your permission, Mr. Wong

2 would like to read a statement that he wrote out.

3    THE COURT:  Okay.  Let me just ask did you prepare

4 that statement with the assistance of your attorney?

5    THE DEFENDANT:  Yes.

6    THE COURT:  And did you have an opportunity then to

7 discuss that statement with your attorney?

8    THE DEFENDANT:  Yes.

9    THE COURT:  And regardless of who may have had the

10 main role in the precise words that are in that statement, are

11 you adopting that statement as if it is your own written

12 statement?

13    THE DEFENDANT:  Yes.

14    THE COURT:  And to the extent that you had any

15 questions about what needed to go in that statement, did your

16 attorney answer those questions to your satisfaction?

17    THE DEFENDANT:  Yes.

18    THE COURT:  All right.  So at this time, and I just

19 ask you for the benefit of the court reporter, since we have a

20 tendency to read more quickly than we speak, if you could just

21 read that statement slowly.

22    THE DEFENDANT:  Okay.

23    MR. ESKEW:  And, Judge, I will say for the benefit

24 of the record, these are Mr. Wong's own words put within the

25 framework of the elements of the offense.

1          THE COURT:  Very well.  Thank you, Mr. Eskew.

2          THE DEFENDANT:  Hi, everybody.  My name is Chi Wong.

3          Between about December 2017 to about December 2020,

4     at the age of 27, I was employed as a pharmacy consultant for

5     A Star Pharmacy located in Brooklyn, New York.

6          While I was working there, I became aware that the

7     pharmacy, A Star Pharmacy had a coupon program.

8          THE COURT:  I'm sorry.  I missed that.  Had a what?

9          THE DEFENDANT:  A coupon program.

10         THE COURT:  Okay.

11         THE DEFENDANT:  That provided coupons and gift cards

12    to patients so that they would be able to buy groceries at a

13    local supermarket.

14         These coupons were provided to patients because many

15    of the pharmacies in the same area, they, they are also

16    provided similar benefits.  So this way, that was a way to get

17    the patients to come to the pharmacy.

18         During my work as a consultant at A Star Pharmacy, I

19    was asked by the owners of the pharmacy Maggie and Amanda to

20    provide pricing information about the medications that would

21    be more profitable for the pharmacy.

22         Based on that request, I routinely provided public

23    pricing information from wholesalers that I got to the owners

24    as requested.  One of the drugs was diclofenac --

25         THE COURT:  Can you spell that?

1    THE DEFENDANT:  Diclofenac.

2    THE COURT:  Can you spell it?

3    THE DEFENDANT:  D-I-C-L-O-F-E-N-A-C.

4    -- which was a profitable drug for the pharmacy at

5    that time.  I provided that information to owners in the

6    beginning of about 2019.

7    I was also aware that one of the owners at the

8    pharmacy, Maggie, also worked for many years in a clinic that

9    located upstairs from the pharmacy and that this clinic sent

10    prescriptions to A Star Pharmacy, including the drug I just

11    talk about, diclofenac, medication that I provided to the

12    owners, Maggie and others.

13    I did not know how Maggie got those prescriptions

14    from her clinic where she work at, but I knew Maggie was

15    getting benefit financially from A Star Pharmacy as an owner

16    of A Star.  She was also helping the pharmacy to get the

17    prescription from the clinic.

18    I was aware that it was illegal to pay money to

19    patients or to doctors or any doctors' staff in exchange for

20    prescription referrals.

21    I know that claims submitted by A Star Pharmacy for

22    diclofenac and other drugs were submitted for reimbursement to

23    Medicare.

24    Due to my poor judgment at a young age, I am so

25    sorry and so regretful that I met this group of people at the

1  wrong time at the wrong place.

2        I took these actions knowingly and willfully and I

3  am pleading guilty because I am, in fact, guilty and I'm so

4  sorry for my actions.

5        THE COURT:  Okay.  Now, when you say you were a

6  pharmacy consultant, can you tell me what that means?

7        THE DEFENDANT:  When I got hired from the owners,

8  they were Amanda and Maggie.  They were also owning other

9  pharmacy at that time so they wanted a person that have

10  experience to help them to operate the pharmacy including

11  increasing, you know, profit margin for the pharmacy at that

12  time.  So I was able to implement a lot of programs, for

13  example, MTM services and all this, you know, also obtaining

14  more contract with secondary wholesalers.

15        THE COURT:  That's more than enough.

16        THE DEFENDANT:  Okay.

17        THE COURT:  So at the time that you were working as

18  a pharmacy consultant, this was in Brooklyn, physically?

19        THE DEFENDANT:  Yes.

20        THE COURT:  And the coupon program, you knew that it

21  was illegal to provide patients who were seeking to have their

22  prescriptions filled with any sort of benefit like the coupon

23  in exchange for them to fill their prescriptions at the

24  pharmacy?

25        THE DEFENDANT:  Can you repeat that?

1          THE COURT:  Sure.

2          You talked about the coupon program.

3          THE DEFENDANT:  Yes.

4          THE COURT:  You knew that it was improper for a

5   pharmacy to offer patients who were coming to fill

6   prescriptions, that it was improper to offer them anything of

7   value in exchange for them filling the prescription --

8          THE DEFENDANT:  Yes.

9          THE COURT:  -- at the pharmacy, is that correct?

10         THE DEFENDANT:  Yes.

11         The program was already implemented before I started

12  working there and they had been doing it for, since the moment

13  they opened, like, years and years ago.

14         THE COURT:  But while you were there, you were aware

15  of that program?

16         THE DEFENDANT:  Yes.  While working there, I became

17  aware of the program, yes.

18         THE COURT:  And, Ms. Glaser Dauermann, is there

19  additional allocution that you need, for example, the

20  defendant's understanding and agreement that he may have

21  reached with the owners of the pharmacy, and anything else

22  about the method by which they were filling these

23  prescriptions that would be indicative of a scheme to defraud

24  Medicare?

25         MS. GLASER DAUERMANN:  Your Honor, I believe he's

1 already allocuted to the kickbacks which satisfies the latter

2 thing that Your Honor mentioned.

3          THE COURT:  Let me ask this.

4          Were you aware that the owners of the pharmacy were

5 receiving payments in exchange for getting the prescriptions

6 sent to them to fill?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.

9          MS. GLASER DAUERMANN:  And that the defendant

10 knowingly and willfully entered into this agreement with the

11 owners of the pharmacy.  I think the defendant has already

12 largely said that, but if Your Honor wouldn't mind inquiring.

13          THE COURT:  And even if you didn't have an explicit

14 agreement where someone said you'll do this and you said, Yes,

15 I'll do that, was there an understanding that you had with the

16 owners of the pharmacy to assist them in carrying out this

17 scheme that they were engaged in?

18          THE DEFENDANT:  Can I have a second?

19          THE COURT:  Yes.

20          (Pause.)

21          THE DEFENDANT:  Yes.

22          THE COURT:  Anything else, Ms. Glaser Dauermann?

23          MS. GLASER DAUERMANN:  That's sufficient for the

24 government.

25          THE COURT:  And, Mr. Eskew, do you believe there is

1  any additional allocution that your client needs to make?

2       MR. ESKEW:  No, Judge.

3       THE COURT:  And I think you said this, Mr. Wong, but

4  you were aware as part of your working there that the health

5  care benefit program that would pay for these prescriptions

6  was Medicare?

7       THE DEFENDANT:  Yes.

8       THE COURT:  Is Medicare the only program or was

9  Medicaid involved as well, Ms. Glaser Dauermann?

10       MS. GLASER DAUERMANN:  Medicaid was also involved

11  but the restitution that we are focused on and the gravamen of

12  the scheme is Medicare.

13       THE COURT:  Were you aware that some of the

14  prescriptions may also have been submitted for payment to

15  Medicaid?

16       THE DEFENDANT:  Yes, that was what they -- I'm

17  sorry.  They had the prescription that was submitted to all

18  type of insurance.

19       THE COURT:  Including Medicaid and Medicare?

20       THE DEFENDANT:  Yes.

21       THE COURT:  So based on the information given to me,

22  as well as my observations of the defendant and his demeanor

23  here in court today, and the representations of counsel, I

24  find that Mr. Wong is fully competent and capable of entering

25  an informed plea, that he is aware of the nature of the

1  charges and the consequences of that plea, and that the plea

2  of guilty is a knowing and voluntary plea and is supported by

3  an independent basis in fact containing the essential elements

4  of the offense in Count One.  I, therefore, accept Mr. Wong's

5  plea of guilty to Count One of the indictment.

6       So, Mr. Wong, what's going to happen now is that the

7  Probation Department will begin to prepare what is known as a

8  presentence report that will assist me at the time of your

9  sentencing.  You will be asked to give information for that

10  report and your attorney may be present at any interview if

11  you wish to give Probation an interview.  That will be up to

12  you and your attorney to discuss.

13       Once the Probation Department has prepared and

14  issued its presentence report, you and your attorney will have

15  an opportunity to review that report and to make any

16  objections or attempt to make corrections to that report.  And

17  you'll also be, through your attorney, able to submit any

18  sentencing memorandum or letters of support for you to me as

19  part of the materials that I receive for the sentencing.

20       Do you understand that?

21       THE DEFENDANT:  Yes.

22       THE COURT:  I'm not going to set a sentencing date.

23  My practice is to request that the Probation Department issue

24  its PSR first and then once we have that, I'll probably set

25  the sentencing date for about 60 days out from that to give

1    you enough time to put in whatever sentencing submissions.

2         So I'm going to ask Probation to get the Probation

3    Department's report done by April 8th and then depending on

4    the timing of that, I'll then set a sentencing hearing date

5    after that.

6         Is there anything else from the government at this

7    point?

8         MS. GLASER DAUERMANN:  Nothing further from the

9    government.

10        THE COURT:  All right.  From the defense?

11        MR. ESKEW:  No.  No, Judge.  Thank you.

12        THE COURT:  Mr. Wong, I just remind you that you're

13   still subject to the conditions of your bond.  I know you have

14   had no issues with satisfying those conditions, but I just

15   remind you that you're still subject to the supervision of the

16   Pretrial Services office.

17        Do you understand that?

18        THE DEFENDANT:  Yes.

19        THE COURT:  All right.  So with that, I will likely

20   see you folks sometime in the late spring for sentencing.

21        All right.  Thank you very much.  Have a good

22   afternoon.

23        MS. GLASER DAUERMANN:  Thank you, Your Honor.

24        (Matter concluded.)

25